Counsel, how do I say your name? Is it Krueser? Yes, Krueser, Your Honor. Ms. Krueser, please proceed. May it please the Court, the trial court erred by invalidating the OPM Regulation 551.423A3, relying on this Court's decision in Billings. There are several reasons why this decision was an error. First, it is unclear that Billings should apply here. Second, Billings does not require that OPM regulations be identical to Department of Labor regulations, contrary to the trial court's reasoning. Third, there are adequate justifications for any difference between the two regulations. Now, contrary to how the trial court and Doe characterized the OPM regulation, it does not exclude all overtime for entry-level trainees. We are talking about a very... How do you contend that Billings does not apply? Because the situation between the regulations in this case and in Billings is not the same. In Billings, the Department of Labor regulations were legislative rules that were promulgated pursuant to its regulatory authority. But here, the Department of Labor regulation is a part of a... It's an interpretive guideline. By its own terms, it does not have binding force. It's supposed to be a practical guide for employers and employees as to the Department of Labor's enforcement position. I have a kind of a dumb question, so bear with me while I catch up. The Department of Labor regulation that you're talking about is 785.2 and 785.29. Are these the ones that you're talking about? Yes, Your Honor. 29 CFR 785.2 is where it states that these Department of Labor regulations are practical guide. And then the Department of Labor regulation that DOE asserts can contradict the OPM regulation is 29 CFR 785.27. .27 and then there's a .32, right? Yes, and then the Department of Labor has two other statements that discuss training. 785.31 talks about special situations where attending lectures and training sessions is not counted as hours of work if it's like a program of instruction for courses from an independent institution of learning. And then 785.32 is apprenticeship training? Yes, that one talks about... Okay, I understand what you're talking about. My question to you is, were any of these adopted through notice and comment rulemaking? I do not believe so, Your Honor. They're part of the Department of Labor's interpretive policy guidelines. So it's a different situation than in billings. So 785.32 was not through notice and comment rulemaking. It was just an assertion of interpretive power? Yes, it's by their own terms in section .85.2. It states that these are meant to... this chapter here is meant to inform the public of the position. I'm not asking you what it states. I'm asking you what process it was used for it to come into existence. It is my understanding it was not notice and comment rulemaking. For all of these, the ones at issue, these Department of Labor rules, they did not go through notice and comment rulemaking? Yes, that's my understanding, Your Honor. Okay, and so as such, you're saying what? Because your government brief is extremely sparse on this. I mean, you have a little more on the gray brief, but you have literally less than a full paragraph in the entire blue brief on this interpretive versus legislative rules, and you don't say the single case of any kind. So what is it you would like for me... how am I supposed to understand this argument? What is the argument you're making? Why does it matter if these are... first of all, you don't even tell me in the blue brief clearly that these regulations... you point to the word interpretive in the regulation itself, but my understanding of interpretive versus legislative rules is it's just about the process, right? It's 553. It's the APA, correct? Yes, Your Honor. Okay, so you don't give me any of that. You really don't explore this argument in your blue brief pretty much at all. So what is it from the blue brief tell me what I should have gleaned from your argument? Yes, Your Honor. Obviously we're aware that Billings is binding on this panel, but it's our position that Billings creates a test for how to decide if an OPM regulation is valid if there is an asserted inconsistency with a Department of Labor regulation. So the second part of that is whether any difference between OPM's interpretation and the Department of Labor standard is required to effectuate the consistency of the application between federal and non-federal employees. So it would be our position that in Billings that Department of Labor standard that was being used was a legislative rule that had gone through a different process and therefore had more force, whereas here the DOE would have OPM in the trial court have to hew to every single Department of Labor just interpretation of its policy, which is lowering OPM's regulatory authority, which was it was given through the Fair Labor Standards Act to administer. And DOL itself is saying that's not, doesn't have the force of law, it's not binding. Yes, the Department of Labor is just saying these are our enforcement positions. It's not the same as the OPM regulation, which went through a more stringent process to become a binding regulation. So the trial court's position is having OPM have to mimic and hew to these Department of Labor guidelines, which have a different status of the Department of Labor regulation in Billings. So Billings can be distinguished on that basis. We're not saying this panel can overturn or erase Billings in some way. We're in that universe of this consistency, but the regulations does not have to be given the same. The Department of Labor pronouncement here does not have to be the same way as it was in Billings. And just so I understand, is your entire argument on this legislative versus interpretive rule in your blue brief on page 8, that one paragraph on page 8? Is it anywhere else in the brief? That is correct, Your Honor. The Billings in this respect relied on language in the House report. Is that correct? Yes, Your Honor. So how does your argument fit in with the language of the House report? The House report does refer to interpretive things, I think. Do you understand that to mean binding interpretations of the statute? Yes, Your Honor. The House report discusses consistency with the rulings, regulations, interpretations, and opinions of the Secretary of Labor, but that's not a statement that's found in the FLSA itself. So when this court created its test in Billings, it didn't adopt wholesale the House report statement. It created a somewhat different test talking about the standards of the Department of Labor. So the House report does not have to be imported wholesale into this trial court's opinion and into the FLSA's opinion. It doesn't have to be seen as a one-from-one. Everything that's listed in the House report does not have to be what the court in Billings was talking about. And the trial court erred in that respect by, I mean, the trial court discusses how, in the footnote, the trial court would not necessarily consider this legislative history to be useful for interpreting the FLSA, because the FLSA does not talk about OPM and Department of Labor having to be identical, but in Billings... In the Billings test, it seemed as if the decision relied in part on Chevron deference. Given local right, does that concern you in any way in terms of the application of the Billings test? Your Honor, the Billings court did discuss Chevron in terms of the first part of its test, which is, is the OPM regulation a reasonable interpretation of the FLSA? So now that there's no Chevron deference, it certainly needs to be reformulated in a way that would analyze the validity of OPM's regulation without applying Chevron deference. But I don't believe that's relevant to the argument that is on appeal here, because the trial court did not invalidate OPM's regulation based on existence or a lack of Chevron deference. And our argument is not that Chevron deference is necessary for the OPM's regulation to be reasonable. It's reasonable as an interpretation of the FLSA without Chevron deference. I think maybe I understood Judge Cunningham's question, I think, a little differently than you might have. I understood her question to be in the Billings case, Billings itself, that case, it relied for its outcome on Chevron. And I think I understood her question. I might be wrong to be asking you, does that give us any room to reject Billings? Or, I mean, maybe I'm saying a little more directly than she did. Is it possible that because the Billings decision itself relied on Chevron to get to the outcome it reached, that that would give us some more to chew on now that Chevron's out the door? Yes, Your Honor. I mean, I would agree with that, because if part of Billings is looking first at the OPM regulation and its reasonableness, if the court now has a different instruction from the Supreme Court on how to do that analysis, then there's obviously space to be formulating what Billings test is stating. And so, did I understand, I mean, I think what the government would like, but you know we can't do as a panel, is just kick Billings. Just gone. Done. Stupid law. Out. Right? I mean, I think that's kind of what you would most like, and I think the trial court judge kind of said that in that footnote, which is why you wanted to bring it up and point it out to us, you know, but assuming that we can't do that, because as a government court, and I'm not sure this case rises to that level of importance, but nonetheless, Billings asked this two-part test, right? Reasonableness on the first part, and then the second part is, how do you understand the second part? It's if there is an inconsistency. Do you, first off, do you agree there's an inconsistency here between the scope of what kind of training will be paid between private sector, where it focuses on apprenticeship, and public employees, federal employees, where it has both apprenticeship and entry level? Do you sort of concede that there is some possible difference in scope? Yes, Your Honor, there is a difference in scope. I would note, I don't believe it's as broad as what Dell and the trial court have. I agree, but so, but the question I have for you is, the second prong of Billings, as I understand it, goes towards, is there a legitimate reason for that difference in scope? Does that sound fair? Yes, Your Honor. And I understood your primary argument in this case to be that the federal government is having to regulate under sort of, following multiple sets of rules, right? There's FLSA, but there's also GETA, the training statute, and do I understand correctly that OPM, unlike the Department of Labor, was very focused on having to meet all the requirements of two different statutes, where the Department of Labor was only focused on FLSA, that that's a place where we should back off and let OPM sort of do what it thinks, from a policy standpoint, is correct under its delegated authority? Is that, do I understand correctly your primary argument in your brief for why Billings doesn't apply here? Yes, Your Honor, that it satisfies the Billing test. The reason, there's a reason why, to the extent it's significantly different, as Doe puts it, there's a reason why OPM has written its regulation to start out from this position that over time, non- productive, after-hours, entry-level training time is not hours of work, is, is that is, it's this more of a carve-out than the OPM one, which sort of says, if you're satisfying all of these rules, then you don't have to count it as hours of work, whereas the OPM regulation starts out with it's not being, this subset of time that we're talking about is not compensable. And just, just so I'm clear, because I think they're going to stand up, you just characterized all of the overtime that they're seeking as non-productive. You had a lot of adjectives in there, and I'm betting they're going to disagree with those adjectives, but before you sit down, let me just ask you, those are all questions not before this Court, right? Because this was only on summary judgment regarding this question of law, and it threw to us something like an interlocutory kind of scenario, right? Like, all those questions about the particular hours and which category they fall into, whether they were productive or weren't productive, whether they, you know, that, those factual questions were left for possible future resolution if necessary. Does that sound right? Yes, that's correct. The trial court has not made any determination of facts as to whether this would be, what, yes, and what categories of hours this all falls into, although it's my, I don't think there's a dispute based on the complaint that we're only talking about after hours preparation homework type time. I believe, I don't think it's in dispute. The trainees are paid for the time attending the course and scheduled activities that they have after hours that are scheduled in advance, so I don't think there's a dispute. We are talking about homework preparation time that varies for each trainee, not the actual courses themselves or the activities that they perform as part of those courses. So we are talking about a very small subset of time. Now whether that those hours are covered by the FLSA, if this regulation is found invalid, or what, if it's productive, non-productive, or integral and indispensable, all of that, you're correct, Your Honor, the trial court has not made those factual determinations yet and reserved those for later in the case. Okay, we'll restore a little time. Thank you, Your Honor. Mr. Rosenthal. Good morning, Your Honors. May it please the court, Daniel Rosenthal for the plaintiff. As my opposing counsel conceded, there is a difference between the DOL and OPM regulations. OPM has created an exclusion to overtime pay, which does not have an analog in DOL regulations and does not have a basis in the statute. If a private sector employee were sent to a 12-week training on-site intensive training... It doesn't have a basis in the statute? Are you contending that the OPM regulation is invalid under the statute? Yes, so we made arguments under both prongs of billing. So we argued that there was a deviation from the Department of Labor regulations, but we also argued that the regulation wasn't a reasonable interpretation of the opposition. Is that issue before us? I think it would be within the discretion of the court. The trial court resolved it solely on the prong of billings relating to deviations from between Department of Labor and OPM. So how is it that the OPM regulation is contrary to the statute? So we don't think there's any basis in the statute to treat entry-level training as a distinct category. In Walling, Supreme Court case, the court noted that in the statute, section 214, it states that apprenticeships... a person attending an apprenticeship can receive less than minimum wage if they're granted a special certificate from the Department of Labor. And the Supreme Court said that the implication of that is in any other situation, a trainee who is an employee is entitled to overtime pay. And we would also add to that, if the training meets the definition of work under the FLSA, which under Tennessee COLE is physical or mental exertion under the control of the employer, primarily for the employer's benefit. So I think the question is, is it fair to say that all entry-level trainings are going to be not treated as work under that definition of work from the Supreme Court? I don't know what OPM says. It's not all entry-level training, right? They have created a blanket rule that applies to all entry-level training, saying that during an entry-level training, anything outside of your regular working hours... So the regular working hours are compensable, right? Correct. So we're talking primarily here about overtime work, works that isn't in your 40-hour work week. Can you clarify whether or not there's no dispute regarding the type of hours we're looking at? Opposing counsel indicated it was really homework-like training that was in dispute. Is that all that's in dispute here? No, we don't agree with that. So our claim applies... certainly doesn't apply to the regular 40-hour work week, because our client was paid for that. But we do allege that there were activities outside of that, other than scheduled activities, more structured activities, in addition to homework and prep time. And that's covered by our claim as well. Structured activities. Can you give me a little bit more on what you mean by that? Sure. So the course... and we're a little bit hampered, because this is before discovery. There are also some sort of sensitivities about law enforcement. So we don't have a full record on this, to be quite frank. But our understanding is that the course involves sort of structured exercises. So it might be sort of a kind of a practical exercise, where the employee is given a scenario and needs to do some work on that. And it's not really homework in that it's occurring at a specific time, like in a structured setting. And so those are one of the types of activities that we understand may be an issue as well. And then the... when I... homework and study I take to be sort of more along the lines of the employee can just decide when to do it, maybe decide how much to do of it. And not everything falls into that category here. So I'd like to talk about the colloquy about billings and whether it applies. And I think Chief Judge Moore was correct. There's not a lot in the government's brief on this. And there was also nothing at all in the trial court on it. This argument wasn't raised there. But I don't think the difference between an interpretive rule and a notice and comment rule matters in this context. And we're not talking about the DO regulations directly having force of law, as applied to federal government employees. That's not what this is about. This is about this court's holding in billings, interpreting the FLSA to require OPM to maintain a certain... But in billings there was a conflict in formal regulations adopted by notice and comment rulemaking, right? In billings? Yes, there was. So this is different from billings. It is different, but our contention is that that difference doesn't matter to the result. It seems kind of odd that a DOL non-binding policy statement would invalidate an OPM regulation that was adopted by notice and comment rulemaking pursuant to a statutory provision giving OPM the authority to adopt such regulations. We understand what the court said in billings was that provision that you mentioned that gives OPM authority, 29 U.S.C. 204-F. The court interpreted that to impose a limit on OPM's authority. And that limit was, OPM has a lot of leeway, but it needs to maintain a level of consistency. Unless there's a good reason to depart from what they refer to as the DOL standard. I don't think you've answered Judge Dyke's question. Yeah, I think I was trying to get there. I apologize. So I think that what matters, the DOL regulation that we're talking about here, it's not a notice and comment rule. Why would Congress want a non-binding policy statement by DOL to trump a formal regulation adopted by OPM? Consistency. The court said that Congress was concerned with consistency. So I think the question is whether the DOL rule at issue is something that's sort of governing the private workforce such that if it were not followed in the federal government, there would be an issue of consistency. And I think that these regulations at issue here, even though they're not notice and comment rules, they are frequently applied by courts. They've been around for a long time. If we disagree in this context that billings applies, what's your best argument for why you should wait? Well, I think that if billing doesn't apply at all, you may need to remand since the lower court did apply billings. We would primarily be arguing that, and I think we would cite Loper-Bright, that the court should look at these regulations without deference and determine whether they represent the best interpretation of the statute. And we don't think that they do. I'm confused by that because I don't see how the OPM regulation is an interpretation of the statute so much as delegated authority to gap fill. Loper addresses interpretations when statutes are ambiguous. Loper quite clearly carved out delegated authority, and there your only challenge to me seems to be under the APA. I don't see how we do a reasonableness assessment, and if it's not ambiguity, but rather OPM gap filling pursuant to expressly delegated authority from Congress. Can you please address that for me? Sure. So, two points. So, first of all, I don't think there's a gap. I think the FLSA requires payment for work. So the question is, is this work or not? And that's an interpretive question. But that was Congress expressly delegated to OPM the authority to interpret what is work, right? Not using the word interpret. They delegated to OPM the ability to administer the statute, and I think that matters under Loper, right? Because the court there said that where there is an express delegation of interpretive authority to interpret a term, that's going to receive a certain level of deference. I don't think we have that here. What we have is 204F, which is OPM may administer the OPM, the FLSA, and we have this court's ruling in Billings interpreting what that section 204F means, and specifically that it places a limit on OPM's authority. I'm happy to talk more about our argument that this sort of does not match with the FLSA at all. I'm trying to understand if, for example, if I was leaning towards a conclusion that OPM justifiably has adopted a notice and comment rule in this situation that differs from the DOL interpretive rule, whether it's because I don't see a problem under the second prong of Billings, or whether it's because there's a difference between interpretive and legislative rules. It doesn't matter which one, right? Let's put that to the side. What's left? You're saying, I think I understand you're saying Billings has two factors. One has to be reasonable, and second, it has to meet this other thing. Right. So what is your argument then about reasonableness, and is it correct that the trial court didn't address that? That is correct, yes. So I think, you know, one option would be to remand on that. Our argument, I think we lay out a relatively extended argument in our brief that this is not a reasonable interpretation. I think it's on page 32 to 33 of your brief, so go ahead. Why is it not a reasonable interpretation? I think it covers a few more pages than that, but so we cite the Supreme Court cases that I mentioned earlier. Walling, which is a case that says that the FLSA does cover training if the trainee is an employee. And then Tennessee Cole, which talks about what does work mean under the FLSA. And we've also cited a bunch of cases from a number of circuits around the country that say that applying those principles, training, it often is compensable. Employees often have to be paid for training. And there isn't really any precedent or any basis in the statute to say that entry-level training, specifically, is going to be treated differently and is going to be less. Can you help me understand your Walling's argument? Because didn't the Supreme Court in Walling's come out against paying? Yes. Oh, so you're using a case that comes out the other way, but saying somehow, nonetheless, it supports your position? Correct. I think there are two principal parts of Walling. So the part that ultimately resolved the case is that the court said that the trainees in question were not employees at the time of the training. They simply weren't. They were applicants, but they weren't employed at all by the employer. And that's why the court says that there was no compensation there. But along the way, in getting to that result, the court talks about the language of the FLSA that implies that if a person is an employee, then they will be compensated for training. And that's the part I mentioned that says that in certain narrow circumstances, an apprentice need not be compensated. So the only reason to include that sort of carve-out for apprentices with a special certificate is if the general rule is that trainees who are employees are entitled to compensation. And the apprentices carve-out, you believe, has a FLSA itself. Is that correct? It's 29 U.S.C. 214. It states that apprentices, in certain cases, may be paid less than minimum wage. So, yeah, we rely mainly on Walling and Tennessee Coal and the cases, lower circuit court cases, interpreting them. We have also cited some cases that, you know, are clearly entry-level training. Those would be Harbour and McLaughlin, which are both fourth circuit cases where the courts ruled for the plaintiffs in those cases, saying that that training did meet the definition of work under the FLSA. What is the language in billings that you're relying on that suggests that it should be extended to a non-binding policy statement? So I think the operative language, and my opposing counsel read it correctly, talked about consistency between OPM's interpretation and the Labor Department's standard. What page of billings is this? I think it might be 1334, but I'm not 100% sure. And then, so we think there is a Department of Labor standard here. Can I just ask, I'm sorry, I want to give you a chance to ask Judge Dyke's question, but I'm still back on this whole reasonableness thing. If I don't agree with you on prong two of billings, why do I even have to address reasonableness? We have delegated authority. If you want to challenge the validity of this regulation, don't you have to formulate a 553? The OPM reg is a legislative rule. Isn't your challenge an APA challenge? I don't know why I need to send this back for an assessment of reasonableness. If the government satisfied prong two, then there's no, for either reason, or if it's interpreted versus legislative rule, I just don't, I don't understand how billings applies anymore at that point, and why I would send it back for reasonableness. You said I have to vacate, send it back for reasonableness. But if we say billings doesn't apply for whichever reason, then isn't your only challenge an APA challenge to a legislative rule by OPM? I don't think so, Your Honor. So the defendant raised this regulation as part of its defense of the case, and I think we're entitled to say, whether it's under billings or another standard, that regulation isn't valid. And I would point the court to a Supreme Court case, Long Island Care versus Coke, 551 U.S. 158. It was another FLSA case where the defendant invoked a regulation as part of its defense, and that case was a DOL regulation. And the court did consider the merits of that challenge within the context of the FLSA lawsuit, not an APA suit. So I think that we're entitled to challenge the regulation through our suit. Sorry, I really want you to get back to Judge Dyke's question. I'm looking for what the governing language is in billings that tells us that it would apply to a non-binding policy statement. So I would point you to two things. So it's the language that I quoted is at it's 1333 or 1334, the DOL standard language. And then the other thing I would point you to is... What is the language? I'm sorry? What's the specific language? Oh, there should be consistency between... The question is whether any difference is between OPM's interpretation and the Labor Department's standard is required to effectuate the consistency of application. So our submission here is that... It's kind of ambiguous as to whether it's talking about formal regulations or whether it was encompassing non-binding policy statements. I suppose you could find that inconsistency. Then I would look to the other thing that you mentioned earlier, which is the basis of the court's holding, which was the committee report, which says that Congress has instructed OPM to administer the FLSA in such a manner to ensure consistency with the meeting, scope, and application established by the rulings, regulations, interpretations, and opinions of the Secretary of Labor. I just don't think there's anything in billings that suggests that the notice and comment status is relevant at all. I agree it's a distinction, but I don't see any basis to say that it actually matters. But don't you think it's kind of odd that a non-binding policy statement by one agency would trump a formal regulation adopted by another? I think that Congress was concerned with consistency. So whether it's binding or non-binding, if the private sector is being governed by a particular standard, they wanted the federal government to generally also be governed by that same standard. I believe my time has expired. I'm happy to answer any further questions. Let me just ask, Judge Cunningham asked the government whether LOPR has any impact on this case. I mean, do you, what if any impact does, you know, the fact that Chevron deference doesn't exist anymore have on this case? Sure. So I think that I agree with a lot of what my opposing counsel said about that, which was that it doesn't affect the prong of billings that we've been talking about focusing on, the consistency prong, because that was this Court interpreting 204F, which is the provision granting authority to OPM, and interpreting it to place a limit on OPM's authority. And I don't think that that interpretation has been disturbed in any way by LOPR. What about the first prong? Just looking at billings itself, right, and the fact that it does have at least some reliance on the Chevron standard, do you feel like this has any impact on whether or not we should be applying billings in this case, given LOPR? So, sure. So I think that if the Court doesn't, so yeah, I understand billings have two parts. So the consistency part, which we've mainly been talking about, and then the reasonableness part. And I do think LOPR-BRITE affects the reasonableness part, and it heightens the burden on the government, because they no longer get the deference of being able to have any reasonable interpretation under LOPR-BRITE. So I certainly don't think it helps the government in any way. It's a ruling that heightens the burden under that part of billings, in my view. But as I said, I don't think it affects the consistency part of billings, which is the one that our primary focus is on. So are you saying that the fact that Chevron has been jettisoned means that maybe the first prong of billings, the reasonableness assessment, isn't the right standard any longer because the billings decision just kind of imported that from the Chevron rubric? Is that what you're arguing? Correct. And so what is it that you think the standard is that we use for assessing the OPM regulation if it's not reasonableness? So I think under that prong, the question would be, I think it would be a similar inquiry, but it wouldn't be, you wouldn't be applying deference to OPM in doing that. So you'd look at the regulation and say, does this represent a correct interpretation of the statute, but without kind of deferring to the agency's view on that question. Okay, so back, interpretation of the statute. This is the part I'm still struggling with. Is the government's OPM regulation in this case an interpretation of something or part of its delegated authority to administer the statute? Well, I think I would say that it's both. I think it's part of its, it's exercising its authority under 204F to administer the statute, but in doing so, I think it's interpreting what work means under the FLSA and how that applies to training. That's my understanding of it. And as I said earlier, I don't think that the language granting that authority to OPM is of the type that Loper-Bright said would give rise to deference because it does not say in there that OPM shall have authority to interpret the statute. It does say administer. I think that makes a difference under Loper-Bright. Okay, thank you. Restore the government's five minutes, please. Your Honors, there's a few things I just wanted to run through here that I would like to rebut. The first is the question of what types of training or activities we're talking about. I'm looking at appendix page 17. There's a footnote in the trial court's decision that says plaintiff does not claim that the BFTC overtime involved, quote, productive work or that the allegedly uncompensated overtime activities occurred during regular working hours. So perhaps there's some factual question later as to what timing was actually happening or what they were doing, but the trial court was relying on that footnote stated in the trial court that I don't believe there's a very forceful claim that this was all productive work or it was part of actual training events. But putting that aside, I would like to discuss the argument made by Doe that OPM's regulation is contradicting the FLSA in some way or is not reasonable under the FLSA. And as your Honors noted, this is not a question of a statutory ambiguity. OPM has been delegated. Is that issue really before us at this point? Well, no, Your Honor. And I was going to note that as well, that that was really not part of this appeal. The trial court simply stated OPM's interpretation could be reasonable in the abstract and then moved on from it. The entire basis for the trial court invalidating this regulation was its over-reading of billings, I would say, and requiring a level of identicalness and consistency that billings actually rejects. Billings in sites that... Okay, so if we were to agree with you on this point that you're making, then is the result that we would vacate and remand the trial court to assess whether it's reasonable to assess whether this is gap-filling, interpretive, whatever, is that what you're saying the next step would be? No, Your Honor. This court should reverse the trial court because the trial court committed a legal error in invalidating the regulation. So if this... Well, vacating also achieves that. But you just said the trial court said OPM's could be reasonable but didn't decide the question of reasonableness. So don't we have to send it back for the trial court to assess that in the first instance? If the OPM's regulation is valid, then it would apply to... No, the trial court determined it wasn't valid for one reason. You just admitted there's two independent reasons it could be invalid for, right? This is not both. It's not all or nothing. Your regulation is going to be deemed invalid if either of those two reasons exist. And you're saying the trial court only addressed one of the two reasons. They argued that they argued below the other reason as well. And you just said the trial court didn't decide it. So what do we do? Don't we have to send it back and say, now go look at reasonableness? It's part of the confusion that this is a 1292B appeal. And if I recall correctly, the only issue that was certified under the 1292B appeal was the conflict issue. Yes, Your Honor. I think that's causing my difficulty here. That seems to me that your position, if I understand it, is that we should reverse on that one issue. But the other issue, as Chief Judge Moore said, is still open for the proceedings in the Court of Federal Claims, right? Yes, Your Honor. This is the government's interlocutory appeal on that issue. However, the trial court did not find it unreasonable. It doesn't address the issue. Yes, unfortunately the trial court didn't. Judge Schwartz just moved on to the second prong of billions. That was the entire basis for invalidating it. You're not going to get everything you want, right? You have this Christmas list and Santa's saying pick one thing from the list. You can't get all of them. So if that's the case, then you've got to figure out. I guess I just want to ask you now, this reasonableness prong, I'm trying to figure out post-Loper. Right? Because the one thing I think Billings really did was pull in Chevron and that's where it came up with the reasonableness concept. You're interpreting the word executive or whatever. I don't know what you're doing here. Are you interpreting? Are you gap filling? I'm trying to understand what you're doing because I'm trying to understand the impact of the elimination of Chevron on this case. Yes, Your Honor. I mean our position would be that the OPM regulation does not conflict with the FLSA in some way. It's not against what the FLSA said. Again, if you're calling it an interpretation, it's that the FLSA simply does not discuss trainees. It talks about employees and that's where the Walling case comes in. The problem is it addresses work, right? And I guess the claim is this is an interpretation of what constitutes work. Is that accurate? I have no idea. I would agree that if the trainees are, obviously the FLSA requires to be paid for overtime work, but it only covers that for employees. And the regulations are, I mean the Department of Labor regulation is written from the idea that they are employees. So then I think there's just simply the FLSA does not address this topic and OPM has been given the authority to. But you can't say entry levels are not employees. Entry levels are employees, right? Well, in this case they may be legally employees of the federal government, but for FLSA purposes they should be paid overtime in the status of an employee. And I believe Walling gets, Walling distinguishes entry level trainees who are in the position of students who are working for their own benefit and trainees who are doing work that is benefiting the employer. In the cases that... Here's what I'm struggling with and I need help before you sit down. I need to figure out... I'll do my best later. I know. If we're vacating remanding, I don't want to leave the trial court without any sort of clue of what he or she is supposed to do next. You know what I mean? And that's kind of where I'm at. I don't know... Is the next thing, go back and think about reasonableness? What is the next thing? Nobody decided reasonableness. Is reasonableness the right test anymore? I don't know. I don't... I think Your Honor was correct when just attempting to invalidate the regulation in general is more of an APA type problem. But that issue can be raised in this case, right? You don't have to bring a separate APA case. If my understanding would be, if this court finds that the trial court erroneously invalidated the regulation based on the second part of Billings, then it would send it back to the trial court. And if the regulation is valid, then it would be developing all the factual issues... We're not saying the regulation is valid. We can't say the regulation is valid because there's two ways to invalidate it. They allege both of them, and only one of them was decided below. And we only, as Judge Knight correctly pointed out, have interlocutory appeal authority over that one decided issue. We don't have the authority to go beyond that in this appeal. I'm puzzled as to why you're fighting the notion that the validity of the regulation on this other theory doesn't remain appropriate subject for the trial court to resolve in further proceedings. All right, Your Honor. No, I do not disagree that the trial court would then have to consider if the... But it's all part of the Billings test is where I'm getting hung up. I think that it's being... The trial court seemed to believe it... I believe, I think it's a favorable statement that it passed the first test of Billings in some way since he then moved on to the second part of Billings. So I'm not willing to say that the trial court just didn't... Wait, wait, wait. Let me get this straight. So when there are... You're not going to like this question. This is a hospital question, not a friendly one. So when there is a multi-part test, and it's really clear that you don't meet part three, I'm supposed to assume fact findings on part one and part two in favor of the government, even though the trial court didn't address them? I mean... You're supposed to answer no. Yeah, no, Your Honor. I mean, I don't want to... I'm not going to dig a hole here where I'm not persuasive here. I don't want to go down an unpersuasive path here. So if... Then I would say that what the trial court should... What the court should do here is reverse on the second element of Billings, and we can discuss walling and the meaning of an employee and everything at the lower court. Then we'll likely see you back here again. I mean, you may see us again. But in any event, the trial court erred. Following the trial court would make the Department of Labor essentially regulating over federal employees when Billings does not require that result. Thank you. Absolutely. Thank both counsel. This case is taken under submission.